Case number 21-3443, Western Missouri, United States v. Anthony Myers Mr. Hearst? May it please the Court, Ben Hearst of the United States. The District Court erred when it held that the Department of Health and Senior Services did something that it indisputably did not have the authority to do. The District Court's error was holding that the Missouri Department of Health and Senior Services controlled positional isomers of cocaine. The District Court erred because it held that the Missouri Department of Health and Senior Services controlled positional isomers of cocaine, but the Department could not have controlled positional isomers of cocaine because it did not undergo notice and comment rulemaking. Can you share with us any authority for the idea that when we're looking at an ACCA predicate that the sentencing court has to look at whether the original state law was legal? Because this is kind of your argument, that this regulation, if it is read as its plain language suggests, would be ultra-virus, basically. Give us any case that suggests that the legality of the passage of the underlying state law is something that the District Court should look at in determining predicate status. Yes, Your Honor. I don't have a case applying this in the context of the ACCA, but what I will say is that this court has an obligation to interpret Missouri's, when we're doing the categorical approach, we're looking at the breadth of the Missouri state prohibition to see if it matches up. And when we're doing that, we're going to apply Missouri state rules of interpretation. So we're just applying the Missouri rules of interpretation, a presumption against invalidity. The fact that I think the court can recognize that if the statute is not valid as opposed to cocaine, no one could have a conviction for positional isomers of cocaine because the statute wouldn't be valid as applied to those people. So while I don't have an ACCA case, Your Honor, I would say this is, we're just doing statutory interpretation here, and Missouri, we've shown, applies a presumption against invalidity, so it will rule. But the Missouri courts themselves have applied this without exploring the invalidity of the underlying regulation and, in fact, have really broad language from the Green decision, all isomers of cocaine. So it feels like you're asking us to dive beyond the Missouri court's own work into what the Missouri court should have been doing, reviewing the regulation, and that feels like an awful lot for a facially pretty clear piece of statutory language. Well, with respect to Green and the James case, Your Honor, those cases don't talk about positional isomers at all, and we know in this case, in fact, we're not arguing from this court's precedent holding that this exact statute qualifies as a predicate for the ACCA because questions that are not addressed by the court are not binding precedent. So when the court of a I think, didn't we do this in the, I can't remember the name of the in-bank case that involved the Minnesota statute where the defendant was arguing it was interpreted in 19-oh-something, so that that's how it gets applied in the ACA today, and we said no, I mean, basically said those Minnesota cases were not controlling, I think we applied the reasonable probability analysis, possibility analysis, I can't remember the name of the case. Your Honor, I apologize. But it took in-bank review, it's not a Yeah, I think that's the burglary case, if I'm remembering. Probably. Right? I'm not familiar with the case, Your Honor, but the premise is something that we agree with. We're not going to treat cases that don't, those cases are talking about L and D cocaine. Those are optical isomers of cocaine. They don't talk about positional isomers, and in fact Green, Green doesn't, Green doesn't say all this, and you're asking us to interpret silence in favor of a much more elaborate sub-reading. Green says basically, the defendant in Green raises the argument, they can't show what kind of cocaine I had. And Green says point blank, it doesn't matter, because all isomers count. Even though it might be a unicorn of isomers, the positional isomer, might be a unicorn of isomers, they said, we don't have to fuss with that, we don't need to test, all isomers count. So I'm not quite sure why we don't stop with Missouri's own interpretation of its statute as saying all isomers count. Well, Your Honor, I respectfully disagree, I don't think the case addresses that issue at all. But I'll go one step further. The Missouri Court of Appeals can't give the Department of Health and Senior Services authority that the Missouri Legislature doesn't give it. So if the Missouri Legislature says, these are the list of prescribed substances in Missouri, and in fact the statutory list doesn't include cocaine at all, or isomers of cocaine at all. And then it says, under these limited circumstances, we're going to allow the Department of Health and Senior Services to add additional, added elements to the schedule. And then the manifest intent, not only the manifest intent, but the only lawful thing that the Department of Health and Senior Services could have done in this case is match the federal schedule. The Court of Appeals in Missouri can't do anything different. So even if those cases say, can be read very broadly to the assumed holding, and by the way, Your Honor, nobody at this time thought that isomers of cocaine included positional isomers of cocaine. Neither party has found a case where anyone thought isomers meant positional isomers of cocaine. But even if the Court read it that way, the Court of Appeals can't give the Department of Health and Senior Services authority that it doesn't have. I put it to you this way, Your Honor. Always in these cases, we're not just asking the question, what do we think the words mean? We're also asking the question, do the words violate a statute? Are the words in irreconcilable conflict with the promulgating or enabling statute? Just sticking with the question, though, these federal schedules were not in effect when Green was deciding. And Green was looking at a broader, a different cocoa leaf context. I actually don't think that's correct, Your Honor. Sure, there were schedules, but not the 1997 and not the ones that are now being followed. Your Honor, I don't think that's quite correct. I think that with respect to the cocaine isomers, the federal government added them, I think, in 1984. Subsequently, Missouri, or the DEA, added the definition. And it was in response to the DEA's addition to that definition that the Department of Health and Senior Services added the schedule term isomer in 1987, Your Honor. And that was done, in fact, in the rulemaking. But why wasn't that an issue in Green? Well, because, Your Honor, as Judge... They were going into D and L and... Well, as Judge Menendez said, Your Honor, positional isomers of cocaine are unicorn drugs. The only person who could credibly raise that issue is a defendant who was actually distributing positional isomers of cocaine. There's a reason this has never come up before. Positional isomers of cocaine occur only a few times in the lab. They're not a thing that's a part of the drug trade. And there's a reason no one's ever attempted to raise this issue before. And, Your Honor, I'll say one more thing. Interpreting this exact statute, 195-015, the Missouri Supreme Court, sitting in bank, said, we're going to presume that the regulator acted within its authority. That presumption should guide this Court's interpretation. And that's... Can I ask you a couple of... I've learned a lot about isomers. Do you concede that the DEA doesn't test for them? Is that in the record? I don't think that's... Well, what I would say, Your Honor, is the DEA is not looking for positional isomers of cocaine. But what the lab analyst said was, if she'd seen one, she would have tried to identify it. But if they're not doing the test to sort them out, then we don't know if she's seen one? I'm trying to understand exactly what the record shows on this particular point. Because you make an argument that nobody ever sees this isomer. So it is truly a unicorn. But opposing counsel says they don't test for it. So they're not... So is it sort of like saying, you know, I'm using a test for COVID and I've never seen the theta variant, but this test doesn't actually flag the theta variant? What they're looking for are origins from the origin of the drug, where it came from. So that's only going to be a relevant thing with respect to naturally occurring cocaine. But what she said, what the lab analyst said is, if they had seen it, they would have attempted to identify it. I don't want to go any further. But how would they have known? That's what I'm trying to get at. If she'd seen the positional isomer, she would have looked for it. But if she's not testing, if there's not a test that flags its presence, how would she know if she's seen it? Well, Your Honor, because it wouldn't be naturally occurring. And the test she does is an on-off switch for naturally occurring? Your Honor, I just don't want to say any more because I don't want to go... There are things we talked about that I don't know that they're in the transcript. So I'll point the court to the transcript from this that's very short. But I don't want to add anything to what I've already said on that. So one of the things I feel like the district court did here was really sort of carefully apply... And let me get to the reasoning. We carefully applied the idea that... First of all, really analyzed Oliver. And then sort of created this or confirmed what I perceive in the law, perhaps, which is the idea that you don't get to the reasonable probability analysis unless you have an indeterminate statute. You are asking us to find this statute to be indeterminate not because of the language of either the statute or the schedule, but because of how the schedule should have been adopted. We're supposed to read a lack of clarity into it. And I'm not sure if I'm persuaded by that or not. I'm still thinking through it. But do you agree that you don't get to realistic probability unless there's an ambiguity in the statute? Your Honor, we're not making that argument, the argument that you would use it, even if the statute was unambiguous in this case. I do want to point the court out that there are cases where this court has done that. That's not an argument we're pursuing here. But just to respond to some of the observations the court has made, Oliver is just a different case because Oliver has explicit qualifications. And that really makes the case different here, not just... I will say, Your Honor, not purely because we're arguing from the manifest intent, which the Court of Appeals and the Supreme Court of Missouri would consider. There are cases in our reply brief that show that they've done that. Even where the literal interpretation of the statute says one thing, they're going to say, well, no, the legislature clearly did not intend for that to be the rule. So we think the court should apply that interpretation, that interpretive principle here. But to give the interpretation that the district court gives renders large portions of the Missouri rule superfluous. There's no reason, if the rule, if the term isomer, unadulterated, unqualified terms, means positional, optical, and geometric, then there's no reason for the Missouri rulemaker to have used that exact same term in other parts of the same rule to qualify the term isomer. Those qualifications would be meaningless if the term naturally included all isomers. But we see that in the schedules a lot. People list a whole lot of things just to be sure that they're including all the things, even if some of the terms, to a true science person, subsume other terms. I mean, we use all the words we can to make sure that nothing is outside the reach of the drug law. But that's what makes it unambiguous. It's impossible to give this term isomer a consistent interpretation throughout the rule because it renders all of these qualifications superfluous. So the court's got a choice. It can either do what the district court did and fine, violate the rule, again, superfluous text. Or it's got to recognize that the term isomer just takes its meaning from its context. It has a different meaning depending on where it's used. Here, it's obvious that what the regulator was trying to do was match the schedule. It's not this court's job. It's not the district court's job to look backward in time, recognizing the existence of positional isomers now and give it an interpretation that the rulemaker could not have lawfully given it and manifestly did not intend to. And by the way, I would just note that those things are not in dispute in this case. The defendant has not argued at all that this was a lawful enactment. I see I'm in my rebuttal time. I'd like to reserve the remainder. Thank you. Thank you. Mr. Goldberg. Thank you, Your Honor. May it please the court, my name is Dan Goldberg and I represent Anthony Myers in this appeal. The district court's judgment should be affirmed because it followed binding case law in concluding that Mr. Myers was not an armed career criminal based on Missouri's definition of cocaine. And I think there are five reasons why this court should affirm the district court. The first is the text. The government concedes that positional isomers of cocaine are isomers. Its experts also agree that positional isomers are isomers. The dictionary also supports this common sense isomer meaning that it's all isomers. Yet the government wants the term isomer to mean just optical and geometric isomers. But that's not what the text says. It just says isomer. And so the government's relying on nonexistent text in the Missouri schedule. Counsel, I have to tell you, that gets into the paradox I see. The paradox that makes your position very troubling. If someone had been charged before the Green prosecution with this offense based on positional isomer, there would have been a motion to dismiss the indictment. That doubtless would have been sustained. Now the Green court didn't have that issue. So now we have a classic heads I win, tails you lose for the government. Let me address that hypothetical, Your Honor, because it's not just Green. I think the Green case is a really good case for us. It's also the James case. If any court had decided what the cases had had to face, the case that I'm positive, an appeal by the government from the dismissal of an indictment for failing the state of crime because the defendant was charged only with distributing positional isomer cocaine. And the argument would have been it's void, adopting a statute and regulation based on federal law that does not include this isomer means a prosecution for that isomer does not state an offense. Your Honor, I disagree. And let me explain why. I think the text is unambiguous. And when you have a case like Green that says it is useless to distinguish between isomers. It doesn't say that. Yes, it does, Your Honor. It says all isomers. I've read it. The last sentence. It uses the word useless. So I think we need to give effect to that. That's addressing a different issue. I don't know if it is. Obviously, a trial court, it's like. They didn't have this issue. I'm not saying how it's distinguishable, Your Honor. Meaningfully. Because if I were the. I'm just saying how would a court have decided an appeal by the state of Missouri when a trial judge had thrown out for failing the state of defense a prosecution for distribution of positional isomer when the clear intent of the state was to follow federal law, the legislature and the agency? Let me phrase it a different way. And maybe we can approach it. How would they have decided? How could you have reversed a dismissal of that indictment? Plain language. How could I have reversed dismissal of the indictment? Plain language. Trump's obvious intent. I know sometimes it does, but you think it would have in this context? I don't. I think. My concern is this. Mr. Myers, for all we know, could have had positional isomer cocaine. It's just speculation to say otherwise. We have no idea what kind of cocaine Mr. Myers had. And when Green is holding what it holds, his defense counsel is told, don't go there. You are not allowed to say that this is positional isomer cocaine. Because there's Missouri Court of Appeals case law that's on point, it's binding, and the trial court has to follow it. I mean, it's the same thing as it's an Eighth Circuit case. What case? Forget Green. What case decides is on point for this issue? James 2. James 2. It also says there's another science-based argument there. And the Missouri Court of Appeals again says, in that case, all the state's expert has to testify is that it was cocaine. No kind of elaboration there. Just cocaine. So it could be optical. It could be geometric. It could be positional. And so those are hugely damaging to anyone that would want to try to raise a positional isomer defense in the state of Missouri. Can I ask you, though? I mean, what Judge Loken is getting at, I think, if I don't want to mischaracterize his thoughts, but the record before us suggests nobody ever has positional isomers of cocaine because they're only made in a lab and they don't have a stimulating effect. Or whatever it is that people buy the other two types of isomers for, you wouldn't buy cocaine with a positional isomer for. So it feels like we are using an extreme hypothetical to invalidate an obvious intent. I think it's a good question, Your Honor. I think the reason why we need to follow the plain law in Missouri is because principles of federalism. I think that Missouri had a right to pass a law that, and I think obviously the record is kind of unclear as to how powerful that type of cocaine is. So Missouri has the right to pass a broad law to prohibit all cocaine. And there's other case laws saying, well, you know, this is also more expedient for courts not to have to send experts to, you know, rural parts of the state of Missouri and have to, you know, to all these challenges. And, of course, there's the case from Oliver and this circuit where, you know, positional isomers of cocaine, that alone was prohibited by the state of Illinois. There's other states doing it the same way. Indiana, New York. So I think the government says, well, there's this contemporary understanding that positional isomers of cocaine were excluded. I just don't think that's supported by the record in the cases that we cite where all these other states are doing it the same way as Missouri. And essentially, I think as you pointed out, Judge Menendez, you know, it's not this court's job to be the Missouri Supreme Court and pretend like it would interpret the law differently. I would feel comfortable making the same arguments. Well, it's our job to predict how the Missouri Supreme Court would decide it. I'm sorry, Your Honor. I didn't understand the question. It's our job to predict how the Missouri Supreme Court would decide an issue it's never considered. I disagree. I think Mathis holds. You disagree? I do. All of our Erie law is wrong or unconstitutional? This isn't an Erie issue. This is a categorical analysis issue. This is interpreting state law. But it's already been interpreted. Your argument is it's clear based on Missouri Court of Appeals decisions. Yes, Your Honor. And so we have to follow that Missouri case law. No, we don't follow intermediate appellate courts unless they're persuasive. I think it's dispositive. And, yes, it has to be persuasive. But the court I want to give you is just one sentence. It's not controlling Missouri Court of Appeals. And I know that you don't think the criminal world is different, but I don't know why criminal law is any different than all the other law where an intermediate appellate court, as a matter of Erie federal supremacy law, is not controlling. The Supreme Court of Missouri is, and I have written decisions, refusing to follow a court of appeals decision because I concluded that it was inconsistent with old Missouri Supreme Court cases and, therefore, would not be followed. In due deference to those decisions, I think the categorical analysis and math is the court said that when a state court decision definitively answers the question, a sentencing judge needs only follow what it says. Now, let's say, you know, you don't think it definitively answers the question, then I guess, you know, that's a different issue. It's not controlling. You're arguing it's controlling, and it's not. I think, yeah, so I guess we can agree to disagree on that point. But I think another point is that- Well, you haven't got any authority. For what, Your Honor? Mathis wasn't addressing Erie interpreting state. Mathis wasn't determining how we decide state law. It was interpreting the categorical analysis. Justice Kagan wasn't telling us if you can find a state trial court who wrote an opinion that did it this way, you have to follow it. Your Honor, I'd like to address another point you made, is that criminal laws aren't different than civil laws. I disagree with that, too. I think that's important. No, I'm talking in the context of Erie. I don't think Erie is pertinent here. We were instructed by the Supreme Court to look at state law first. And if state law has established an answer, we're done. Right, and I think it does. The only way under Erie precedent a state law is established by the judiciary is by the highest court of the state. Everything else is followed if it's persuasive. Well, first of all, I think we look at the text, right? So I think that's binding. Second, the Missouri case law. But then I think there's other things we need to get to, which I haven't really been able to talk about. And that's the categorical analysis in the Fifth and Sixth Amendments. Here, I think the real problem is that there's binding Supreme Court case law. Under the Armed Career Criminal Act, there's things that the government must do. They have a burden of proof. And to do that, they need to engage the Schuler test. And that's a serious drug offense here. And what does the Supreme Court say that you look at in that context? That you look, quote, only to the statutory definitions of the prior offenses, end quote. So you don't get to go on a walkabout and look in context and look at history. All that stuff is totally irrelevant. And I think a real problem here is that the government never engages Mathis. It doesn't cite to Mathis once, Schuler once, Apprendi once. And so I just don't know how this court can reverse when the government has engaged these touchstones of the categorical analysis. So you suggested we have James, we have Green, and they both stand for the idea that you don't get to test your cocaine, that all isomers count. Correct. Are there any Missouri Court of Appeals decisions that decide anything different, like that would hint that certain isomers don't count? Not that I'm aware of, Your Honor. Are there any cases that have been raised even at the trial level that you know of that get into the argument that certain isomers don't count? Not that I'm aware of. Because I think one of the things Judge Loken is trying to get at is the idea that would somebody be able to argue you can't prosecute me because Missouri law tracks federal law, federal law doesn't include positional isomers. Do we have any hint in the Missouri case law that that argument would find roots? About positional isomer cocaine? Yes. Beyond those two cases, in the plain text of the statute, I mean, I think that's pretty strong ammunition that supports our argument, and I think that's what the trial court was instructed to do here. Chief Judge Phillips used the tools that she was told by the Supreme Court and this Court to do in the categorical analysis. Let me try sort of the converse of that. Would you agree that if the reasonable possibility doctrine applies here, we can't simply affirm? No. And let me explain why. I think that it's the same thing as Oliver or Jerry Brown or Gonzales v. Wilkinson. I think the text is plainly overbroad on its face. That's dispositive. But let's just back up. You know, I said if we decide it applies. I know you argue it can't apply for these reasons, but that doesn't answer my question. If it applies, how could we affirm on the trial court's analysis? I see what you're saying, that we have to assume that there's an ambiguity in both the text and the case law. That's assuming it only applies if the statute's ambiguous. I mean, just the doctrine itself, the Moncrief. If the Moncrief doctrine applies. Yes, Your Honor. So there's two schools of thought on that, right? We can't affirm, can we? I think there's two schools of thought. No? He's asking you to accept for a moment that one school has one. I'm giving you, hypothetically, the school of thought that if we decide the school of thought you don't like applies. Right. What do we do? I guess we need to look and see if I've come forth with actual case examples of people actually being convicted of positionalized terms of cocaine. Well, you know, you can establish a reasonable possibility elsewhere, but I don't think it's in this record. Fair enough, Your Honor. You don't have to have an on-point case. Right. I mean, the other thing I could do, I could have gone and tried to find Mr. Myers' cocaine, right, and have it tested myself. But that's not my burden, right? There's a demand for certainty in these cases. That's what the Supreme Court has repeatedly said, and I just don't think the government's gotten there. I see I'm out of my time, and so for all these reasons, Respectee Smith, the district court should be affirmed. Thank you. Thank you. Thank you. Thank you, Your Honor. Several points I heard there that I'd like to respond to briefly. There's an appeal to federalism, but I think the federalism appeal points in the direction of respecting the limits that the Missouri legislature has placed on the Missouri Department of Health and Senior Services. It's not this court's job to decide to control something that the department definitely didn't want to control, and we still don't have a dispute about either the lawfulness or about the manifest intent. We do think the court ought to give the term the contemporary meaning. That's an instruction from the Supreme Court. We don't update terms as time goes on. If the term is to be updated, it's the job of the Missouri legislature and the Department of Health and Senior Services. The question about demand for certainty, I've heard that. We've responded to that in our brief. The question raised in Mathis and where the government's burden comes in is on proving what crime the defendant actually committed, and we prove that here, like we're supposed to with Shepard documents. The question of the breadth of the Missouri statute is just a question of statutory interpretation. If the realistic probability test applies, Your Honor, the defendant has never attempted to show that there was any prior conviction, either in his case or in another case. You're not arguing it applies? We're arguing, well, Your Honor, two arguments. We're arguing that the statute unambiguously doesn't cover positionalized forms of cocaine. We're also arguing that, at the very least, it's ambiguous, and the realistic probability doctrine would apply in that case. So on either view, we win. But your position is, just so I understand the two schools of thought that I'm getting up to speed on, your position is you don't get to reasonable probability unless we find ambiguity. That's correct, Your Honor. Okay. That's the argument we're making. Okay. I'm out of time. We appreciate the Court's time. We'd ask the Court to reverse remand for resentencing under the ACCA. Thank you. Thank you, Counsel. The case has been well-briefed and well-argued, and it's a not unfamiliar universe, but it never gets any easier or less complicated. There's always something new. Yeah, we'll take it under advisory. Thank you both.